**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**Richard Ojeda,**
**Plaintiff Below, Petitioner**

**vs.) No. 22-0057** (Kanawha County 21-C-640)

**Rupert Phillips,**
**Defendant Below, Respondent**


## MEMORANDUM DECISION


Petitioner Richard Ojeda appeals the Circuit Court of Kanawha County's December 20, 2021, order granting Respondent Rupert Phillips's motion to dismiss petitioner's claims pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1] Upon our review, we find no substantial question of law and no prejudicial error. Accordingly, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

Petitioner was a West Virginia Senator from 2016 to 2019, and in 2020, petitioner was an unsuccessful candidate for both President of the United States and the United States Senate. On September 9, 2020, petitioner posted a twenty-three-minute video to his Facebook page in which he expressed his disappointment with the manner in which Logan County authorities handled the criminal case against a man who physically assaulted him in 2016. In the video, petitioner directed the statements "I wish cancer upon you!" and "You're a bootlicker!" to the Logan County prosecuting attorney. Throughout the video, petitioner used numerous expletives and repeatedly asked that the video be shared.

During the 2020 election cycle, in support of his campaign for the West Virginia Senate, respondent ran a sixty-second radio ad using soundbites from petitioner's video. After the radio ad stated, "The liberal left sure has a way of saying things," the ad played the audio from petitioner's Facebook video of petitioner exclaiming, "You're a bootlicker!" The radio ad then stated that liberals "have a way of expressing their feelings," after which the ad played audio from petitioner's Facebook video of petitioner exclaiming, "I wish cancer upon you!" The ad then suggested, "We can't afford the liberal left to mar our West Virginia values." The radio ad did not mention petitioner by name, nor did it indicate the individual upon whom petitioner wished cancer.

---

[1] Petitioner appears by counsel Teresa C. Toriseva and Joshua Miller. Respondent appears by counsel Michael W. Carey and David R. Pogue.

Petitioner filed a civil action against respondent in the Kanawha County Circuit Court alleging that respondent's ads "quoted, suggested, and implied that [petitioner] ha[d] wished cancer on candidates with political ideology other than his own," that the ads took petitioner's prior statements out of context, and that respondent used petitioner's "name and reputation as a way to advance [respondent]'s own interests and profit from that use, all while defaming [petitioner] and injuring his reputation." Petitioner's complaint included claims for defamation, invasion of privacy by placing another in a false light before the public, invasion of privacy by appropriation of another's name or likeness, violation of the right of publicity, and intentional infliction of emotional distress. Respondent filed a motion to dismiss petitioner's claims for failing to state a claim upon which relief could be granted under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. To the motion, respondent attached (1) a copy of petitioner's Facebook video and (2) respondent's radio ad. Upon considering the parties arguments, the Facebook video, the radio ad,[2] and its standard of review, the circuit court granted respondent's motion by order entered on December 20, 2021.

Petitioner now appeals the dismissal of his claims, arguing in four assignments of error that the circuit court committed reversible error by dismissing his case against respondent. Our review of the circuit court's order is de novo. *See* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").

In petitioner's first assignment of error, he argues that his defamation claim should have survived the motion to dismiss because respondent used audio portions of the Facebook video out of context to suggest that he wished cancer on those politically different from himself. He also argues that respondent's intent and motive was to humiliate and harass petitioner, damage petitioner's reputation, and advance respondent's own political and financial goals. We determine that petitioner's claim fails because he cannot establish all the required elements of a defamation claim.

---

[2] Relying on *Mountaineer Fire & Rescue Equipment, LLC v. City National Bank of West Virginia*, 244 W. Va. 508, 854 S.E.2d 870 (2020), the circuit court determined that the Facebook video and radio ad could be considered without converting the motion to a motion for summary judgment. In *Mountaineer Fire & Rescue Equipment*, we held:

> When a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7).

*Id.* at 514, 854 S.E.2d at 876, Syl. Pt. 6.

"A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' Restatement (Second) of Torts § 559 (1977)." *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 669, 706, 320 S.E.2d 70, 77 (1983). "[D]efamation may be accomplished through inference, implication, innuendo or insinuation, as well as through direct reference." *Id.* at 709, 320 S.E.2d at 80. We have held that "statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action," Syl. Pt. 3, in part, *Maynard v. Daily Gazette Co.*, 191 W. Va. 601, 447 S.E.2d 293 (1994), and that "[a] statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." *Id.* at 602, 447 S.E.2d at 294, Syl. Pt. 4. The Supreme Court of the United States has observed, "it can hardly be doubted that the [First Amendment] has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S. Ct. 621, 625 (1971).

With regard to defamation actions, the standard that applies to assessing the defendant's conduct depends on the status of the plaintiff. *See* Syl. Pt. 2, in part, *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 480 S.E.2d 548 (1996) ("Under West Virginia law, a libel plaintiff's status sets the standard for assessing the defendant's conduct."). Where the plaintiff is a public figure, he or she "must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 342, 480 S.E.2d at 551, Syl. Pt. 2, in part; *see also* Syl. Pt. 1, *Sprouse v. Clay Communications, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975) ("A . . . public official [] can sustain an action for libel only if he can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material."). Petitioner is a self-proclaimed public figure.[3] Accordingly, to prevail, he must demonstrate, among other things, that respondent's statements were false, misleading, or published in reckless disregard of the truth.

While we have said that, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff," *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 538, 236 S.E.2d 207, 212 (1977), we have held that a stricter standard applies to the defamation actions of public figures. *See* Syl. Pt. 3, *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778 (1986) ("The First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution require that trial courts apply a stricter standard in appraising defamation actions filed by public officials or public figures under a motion to dismiss filed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the

---

[3] The Court has recognized that a "public figure" can be defined as "a person who, by his accomplishments, fame or mode of living, or by adopting a profession or calling which gives the public a legitimate interest in his doings, his affairs and his character, has become a public personage." *Crump*, 173 W. Va. at 712, 320 S.E.2d at 83 (quoting *Palmer v. Schonhorn Enters., Inc.*, 232 A.2d 458, 460 (N.J. Super. Ct. Ch. Div. 1967)).

3

complaint should be dismissed under Rule 12(b)(6).")." In evaluating petitioner's defamation claim, we must determine whether the complaint shows, on its face, facts that are sufficient to establish the elements of the claim. *Id.*

Petitioner cannot establish that the alleged defamatory statements were false, misleading, or published in reckless disregard of the truth. We find, as the circuit court did, that the radio ad did not contain a provably false assertion of fact, i.e., a "statement [that] can[] be objectively characterized as either true or false." *Maynard*, 191 W. Va. at 605, 447 S.E.2d at 297. To the extent petitioner avers that the ad implied he wished cancer upon those politically different from himself, we find that this position is not supported by a reasonable review of the radio ad. Rather, the radio ad expresses respondent's opinion as to how liberals express themselves, and that opinion is protected by the First Amendment. Thus, the complaint fails to demonstrate on its face sufficient facts to support all the elements of petitioner's defamation claim, and we find no error in the dismissal of this claim.

In his second assignment of error, petitioner argues that his claim of invasion of privacy by placing another in a false light before the public (a "false light invasion of privacy claim") should not have been dismissed. In support of this argument, petitioner asserts that the statements he made in the Facebook video were not meant to be of a political nature, that he referenced an isolated event, and that he never gave respondent permission to use the video in the radio ad. The circuit court determined that, to maintain the claim, petitioner was required to establish that the radio ad contained a provably false statement. The circuit court concluded that because petitioner could not establish the falsity element of his defamation claim, his claim for false light invasion of privacy was likewise unsustainable. Again, we agree. We have recognized that "[t]he most prominent characteristic shared by [defamation actions and actions for false light invasion of privacy] is that the matter publicized as to the plaintiff must be untrue." *Crump*, 173 W. Va. at 715-16, 320 S.E.2d at 87. Having already decided that the radio ad did not contain a provably false assertion of fact, we conclude that the complaint fails to demonstrate on its face sufficient facts to support all the elements of petitioner's false light invasion of privacy claim. Therefore, the circuit court committed no error in dismissing the claim.

In his third assignment of error, petitioner argues that his claim of invasion of privacy based upon respondent's use of petitioner's statements for the purpose of appropriating commercial or other value should not have been dismissed. Petitioner alleges that respondent used petitioner's statements from the Facebook video, without his permission, and that respondent was unjustly enriched by the nonpermissive use of petitioner's statements. The Court has held, "In order for a communication to constitute an appropriation, mere publication of a person's name or likeness is not enough, the defendant must take for his own use or benefit the reputation, prestige or commercial standing, public interest or other value associated with the name or likeness published." *Id.* at 703, 320 S.E.2d at 74, Syl. Pt. 11. The circuit court determined that because respondent's radio ad distinguished him from liberals like petitioner and because respondent used petitioner's words for a political purpose rather than a commercial purpose, his conduct was not actionable under *Crump* and was protected by the First Amendment. We agree. Thus, the circuit court did not err by dismissing this claim.

4

Petitioner's third assignment of error also alleges that the circuit court erred by dismissing his claim for a violation of his right of publicity. Petitioner contends that respondent was unjustly enriched by the nonpermissive use of petitioner's voice and reputation. We have recognized that the right of publicity "remedies the unjust enrichment caused by an unauthorized exploitation of the good will and reputation that a public figure develops in his name or likeness through the investment of time, money and effort." *Id.* at 714 n.6, 320 S.E.2d at 85 n.6. "[T]he right of publicity protects the commercial value of a name or likeness." *Id.* Petitioner avers that respondent's radio ad had two purposes: to garner votes and raise funds for respondent's campaign; however, these purposes are strictly political, not commercial. Respondent made no use of the commercial value of petitioner's voice. Accordingly, petitioner's claim for a violation of his right to publicity fails, and the circuit court did not commit error by dismissing this claim.

Finally, in petitioner's fourth assignment of error, he argues that the circuit court erred by dismissing his claim for intentional infliction of emotional distress. Petitioner contends that he can establish all the elements of the claim. We disagree.

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab'ys., Inc.*, 202 W. Va. 369, 504 S.E.2d 419 (1998).

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

*Id.* at 371, 504 S.E.2d at 421, Syl. Pt. 4.

We determine, as the circuit court did, that respondent's conduct cannot reasonably be considered outrageous. Petitioner identifies as a public figure. The video included language petitioner admitted was "crass" or "extreme," and petitioner asked that the video be shared. Petitioner made and posted the Facebook video during an election cycle. It cannot be considered outrageous that language from the video appeared in respondent's radio ad during that same election cycle. Consequently, the first element of petitioner's claim of intentional infliction of emotional distress cannot be satisfied, and the claim fails. The circuit court did not err in dismissing the claim.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  May 2, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Hutchison, Justice, dissenting:

I dissent to the majority's resolution of this case.  I would have set this case for oral argument to thoroughly address the error alleged in this appeal.  Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision.  Accordingly, I respectfully dissent.

**DISQUALIFIED:**

Justice Tim Armstead